IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| James Kiesner, | ) | C/A No.: 1:12-448-JMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Starbucks Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this employment discrimination case, James Kiesner ("Plaintiff") is suing his employer Starbucks Corporation ("Defendant"). Plaintiff alleges a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq. ("ADEA"). This matter comes before the court on Defendant's motion for summary judgment filed on October 29, 2012. [Entry #20]. Plaintiff filed a response to the motion on November 30, 2012 [Entry #23], and Defendant filed a reply on December 10, 2012 [Entry #24].

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the court grant Defendant's motion.

I.      Factual and Procedural Background[1]

Plaintiff was born on December 13, 1946. [Entry #20-2 at 11]. He and his wife moved from California to South Carolina in approximately 2002. *Id.* at 12. While living in California, he operated a horse farm specializing in training thoroughbred horses and where he employed from two to sixteen employees. *Id.* at 26. When Plaintiff moved to South Carolina, he built a horse farm with the intention of breeding horses for profit. *Id.* at 13. He had a maximum of two employees at the South Carolina horse farm. *Id.* at 29. After some financial setbacks, Plaintiff stopped attempting to operate the horse farm for profit in 2006 or 2007. *Id.* at 14–16.

Plaintiff began working for Defendant in April 2007. *Id.* at 20. He initially interviewed for an entry-level barista position, but, given his prior business experience, was offered a position as a shift supervisor. *Id.* at 30. A shift supervisor has keys to the

---

[1] As support for his opposition to Defendant's motion, Plaintiff submitted a declaration dated November 27, 2012, giving his version of the facts of the case. [Entry #23-1]. Much of the factual background provided by Plaintiff in his response brief relies on his declaration rather than on deposition testimony, despite the fact that most of the information addressed in the declaration was also addressed in Plaintiff's deposition. Discovery in this case closed on September 20, 2012. [Entries ##15, 17]. Prior to the close of discovery, Plaintiff was deposed at length, at which time he was given the opportunity to state the facts on the record and be subject to examination regarding those facts. His failure to rely on the record facts in opposing summary judgment violates Fed. R. Civ. P. 56(c)(1)(A), which provides that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." *See also* Fed. R. Civ. P. 56(e) (stating that a party must properly support his assertions of fact and properly address another party's assertions of fact). Consequently, the undersigned disregards Plaintiff's post-discovery deadline declaration in setting forth the factual background in this case. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Fuller v. Cnty. of Charleston*, 444 F. Supp. 2d 494, 499 (D.S.C. 2006) (citing *Larken v. Perkins*, 22 Fed. Appx. 114, *1 (4th Cir. 2001) (noting that the district court properly found a party's "own, self-serving affidavit[s] containing conclusory assertions and unsubstantiated speculation" insufficient to stave off summary judgment)).

store and is responsible for cash management, documentation and logs, making sure the team accomplishes the daily tasks, and properly staffing the shift. *Id.* at 35. After training at the Evans store, which was managed by Stephanie Fournier, Plaintiff became a shift supervisor at the North Augusta store. *Id.* at 31.

The North Augusta store was a new store and Fournier served as the manager for two or three months after it opened. *Id.* at 37. Plaintiff was satisfied with Fournier's supervision during that time. *Id.* at 43. The next manager was Asher Alston. *Id.* at 36. Alston would rotate additional responsibilities to the shift supervisors, including doing the paper order and the roasting plant order. *Id.* at 36. Plaintiff expressed to Alston that he had a goal of becoming a store manager, and Alston offered input on how Plaintiff could develop his skills to advance. *Id.* at 40. Alston left the company in 2008 and Brian Williams, the former assistant manager at the Evans location, was promoted to manager of the North Augusta store. *Id.* at 41. Plaintiff was dissatisfied with the way Williams managed the store. *Id.* at 43–49.

In early 2010, Plaintiff worked with Patrick Biestman, a former store manager and district manager, who was hired as a barista at the North Augusta store. *Id.* at 95–96. Plaintiff testified that Biestman called him an "old man" for the first time in January 2010. *Id.* Biestman used the term over his wireless headset when he wanted to get Plaintiff's attention. *Id.* at 96. Plaintiff never told Biestman to stop calling him "old man" and never reported to management that he found the behavior offensive and wanted it to stop. *Id.* at 99. Plaintiff testified that Biestman used the term in front of the store manager, Williams.

3

Williams ultimately left the store and, thereafter, Plaintiff testified that the district manager, Dave Schreck, called him and asked him to be his "go-to person" at the store in the interim. *Id.* at 53–54. Plaintiff indicated his desire to move into a management position. *Id.* at 54. Schreck stated that Richard Bell, who had prior experience as a store manager, had been hired for a manager position at the Augusta Mall store, but would soon be transferring over to become manager of the North Augusta store. *Id.* Schreck said that when Bell moved to the North Augusta store, there would be a manager opening at the Augusta Mall store for which Plaintiff could apply. *Id.*

In late March or early April 2010, after Williams left his position, Fournier became the acting North Augusta store manager for approximately two months, but was typically only in the store on Mondays to do administrative work. *Id.* at 49, 61. During that time, Plaintiff felt like her attitude toward him had changed. *Id.* at 53. He described her as "less outgoing, less friendly than she had been when she initially opened the store." *Id.* He did not know whether her attitude toward other people had similarly changed. *Id.* at 61. On April 21, 2010, Fournier reprimanded Plaintiff for "spending too much time off the floor" and not showing leadership ability. *Id.* at 51. Plaintiff responded that he was surprised to hear that because he only ever left the floor for breaks or when he had to do something on the computer in the back room. *Id.* On April 28, 2010, Fournier wrote Plaintiff up for leaving a blank in the log book. *Id.* at 56. She also reprimanded him for highlighting, with red highlighter, a duty roster that had been inadequately completed by another employee. *Id.* at 55–56. She stated that the color red had a severe negative connotation and that its use was disrespectful to the partners (a

term used to refer to Defendant's employees). *Id.* at 56. Plaintiff testified that he had seen Schreck similarly highlight documents that were not completely filled out and the red highlighter "just happened to be the only one there." *Id.* at 55–56.

Either shortly before or after Fournier became acting manager of the North Augusta store, Plaintiff applied for a manager position at the Augusta Mall store by submitting his resume to Dave Schreck. *Id.* at 63–64. Shortly before the interview process, Schreck told Plaintiff that a manager position at the Evans store had also become available and that he would be filling both positions with the current applicants for the position at the Augusta Mall store. *Id.* at 65. Plaintiff testified that he also applied for an assistant store manager position during this time.[2] *Id.* at 65–66. After applying, either Schreck or Fournier contacted him to schedule an interview. *Id.* at 67.

Plaintiff testified that on April 27, 2010 (one day before he was reprimanded by Fournier), Schreck was at the North Augusta store and told Plaintiff he was looking forward to his interview a few days later. *Id.* at 68. Schreck then told Plaintiff that it would be a long interview day and that Plaintiff's interview was last or next to last. *Id.* Plaintiff testified that he made a casual, offhand remark that he hoped Schreck was not

---

[2] Defendant asserts that although Plaintiff testified that he interviewed for and was not selected for the assistant manager position, he did not reference the assistant manager position in his charge of discrimination or in his complaint. [Entry #20-1 at 1, n. 2]. Thus, Defendant argues that Plaintiff's failure to exhaust his administrative remedies regarding discrimination as to the assistant store manager position is not properly before the court. *Id.* Plaintiff argues that even if the court does not consider the assistant manager position as part of his failure to promote claim, Defendant's decision to award the assistant manager position to a younger candidate should be considered as circumstantial evidence of discriminatory animus. [Entry #23 at 20, n. 5]. Assuming without deciding that Plaintiff sufficiently exhausted his claim as to the assistant manager position, the undersigned recommends Defendant be granted summary judgment for the reasons cited herein.

5

too tired by then and Schreck responded, "for someone my age I still have a lot of energy." *Id.* at 69. Plaintiff testified that he did not intend to have any age reference in his comment. *Id.*

During Plaintiff's interview on May 2, 2010, he asked if he could explain his previous business experience to Schreck and was permitted to do so. *Id.* at 71; Entry #20-3 at 78. Plaintiff recalls that Schreck took notes and asked him questions about his leadership at the North Augusta store. [Entry #20-2 72, 74]. Plaintiff testified that he expressed concern to Schreck that the other candidates had their store managers advocating for them and he did not. *Id.* at 76.

Schreck testified that he knew Plaintiff understood the business, but that Plaintiff did not give him the impression during the interview that he could get work done through a team. [Entry #20-3 at 28]. He stated that although he asked the question several different ways, he "didn't get an answer back that satisfied [him] that [Plaintiff] understood how to get work done through people." *Id.* Schreck recalled that Plaintiff described his vast knowledge and understanding of the horse business, but spent very little time talking about how he accomplished the goals of that business through a team. *Id.* Schreck also expressed concern regarding an incident involving Plaintiff's failure to complete temperature logs as shift manager even though he was aware that it was his duty as shift supervisor. *Id.* at 26–27. Finally, Schreck took into consideration feedback from Fournier who had described Plaintiff as "highly directive." *Id.* at 28.

The other candidates for the open positions were: (1) April Price (age 23); (2) Erica Marchetti (age 28); (3) Derwin Lee (age 22); (4) Alicia Castelberry (age 38); (5)

6

Plaintiff; and (6) Heather Karisny (age 24). [Entry #20-3 at 57, 78, 83]. All were internal candidates who had been shift supervisors for about the same amount of time. [Entry #20-3 at 21].

The day after the interviews, Schreck had a conference call with three store managers in the Augusta market including Fournier to tell them his decisions on who to promote and to get their feedback. [Entry #20-3 at 20]. Schreck chose Erica Marchetti for the Augusta Mall store, Derwin Lee for the Evans store, and April Price for assistant manager of the I-20 store. *Id.* at 21. As to why he chose Marchetti, Schreck stated:

> Erica Marchetti had been a shift supervisor at the same store I-20/Washington under Stephanie Fournier who was my number one performing store manager, and she did have the skills that I was looking for in particular for managing the mall which was a little bit smaller store. It was a café store and it was a little bit smaller volume. I felt that she—that she worked very well with people. It was—mall teams are often difficult teams because they are harder to staff. I felt that she could go in there and create a positive atmosphere. And the results were quite good, but they were inconsistent in the way they kept the store clean and the way that they were managing their inventory schedule. And I felt that she had that experience and that strength to do those things.

*Id.* at 22–23. With regard to Lee, Schreck said the following:

> Derwin Lee was a shift supervisor for four years at the Augusta exchange store under Tiffany Williams, my second highest performing manager. And Derwin, because he was working at a drive-through store, I felt that he could take over the Evans store which is a pretty high volume store. It was doing about $20,000 a week. And, in particular, I liked the fact that he was a very positive, upbeat, and enthusiastic individual who spent a lot of time encouraging and creating a positive environment for his partners while he very assertively pursued his goals, his measurable goals. This store needed someone who would offer clear direction. Derwin interviewed extremely well around his ability to work well with others and how he managed processes through his teams to accomplish the goals that he was set to achieve.

*Id.* at 23. Finally, as to why he chose Price, Schreck said:

7

> April Price was recognized as a top performer in my highest volume store. She was a solid leader who demonstrated the ability to get work done through her team. Her team accomplished, with her assistance, the achievable results that we were targeted to receive. . . . So I felt that she was a very good candidate to become an assistant manager. I didn't feel she was ready to take a store assignment yet.

*Id.* at 21–22.

When Schreck informed Plaintiff that he had not been selected, Plaintiff stated he was very disappointed and asked to meet with Schreck. [Entry #20-2 at 77–78]. At the meeting, which occurred in June 2010 after Richard Bell had become manager of the North Augusta store, Schreck told Plaintiff he was not promoted because he was "too directive" and described that as being "too much of a boss" and not demonstrating leadership skills. *Id.* at 81, 85. Plaintiff testified that Schreck also likely made reference to his personal observations. *Id.* at 81. Plaintiff recalls discussing a "partner development plan" to develop his leadership skills. *Id.* at 84.

For his part, Schreck wanted Plaintiff to know two things during the meeting. [Entry #20-3 at 30]. First, Schreck did not feel Plaintiff had explained his business experience well during the interview and had not demonstrated that he had knowledge to get work done through people. *Id.* Second, Schreck felt Plaintiff had real promise and wanted to give him an opportunity to demonstrate his ability to work through others. *Id.*

Within a month of the promotion decisions, Schreck asked Plaintiff to help launch a new microbrew coffee called VIA. [Entry #20-2 at 102–03, 107]. Plaintiff was designated as the VIA influencer for the North Augusta store and was expected to promote the product and motivate his fellow partners to sell it. *Id.* at 103–04. Plaintiff

8

was aware that this was an opportunity to show his leadership. *Id.* at 104. Schreck thought Plaintiff was successful in the role and made that success known in the district. *Id.* at 105. He also asked Plaintiff to act as the district VIA lead and represent the district on a weekly area-wide conference call regarding the product. *Id.* When Schreck offered Plaintiff the opportunity to manage the conference calls for the area, Plaintiff declined because he did not have a corporate email account, was the only shift supervisor performing as a district VIA lead in the area, did not have access to ongoing district sales goals or performance reports, and had not met any of the managers in the Columbia area. *Id.* at 155.

Plaintiff testified that during one of the district VIA conference calls, Schreck "kept making references . . . about his age and the ability to change and how things were different now and how we've become sales persons." *Id.* at 127. Plaintiff found it odd that Schreck was associating age with the ability to adapt to new circumstances and new directions. *Id.*

On or about August 23, 2010, Bell asked Plaintiff if he was interested in working as a shift supervisor in the I-20 store managed by Fournier with the possibility of a future assistant manager position. *Id.* at 109–10. Bell presented it as an opportunity for Plaintiff to "show what [he could] do." *Id.* at 111. Plaintiff declined the opportunity because he did not want to work with Fournier based on their prior encounters in April 2010. *Id.* at 110–11. Plaintiff told Fournier that he was still interested in future management positions. *Id.* at 113. A few days later, Schreck came to the North Augusta store to speak with Plaintiff about the opportunity. *Id.* at 114. He stated that he was

9

going to have two assistant manager positions coming available and may be able to work something out where Plaintiff did not have to train under Fournier. *Id.* at 115. During the conversation, Schreck stated that Derwin Lee, who had been promoted instead of Plaintiff, was much too young to take on the training of an assistant store manager. *Id.* at 87, 115.

Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission on September 9, 2010. *Id.* at 148. He alleged that he had been called an "old man" by Patrick Biestman and was passed over by Dave Schreck for two store manager positions. *Id.*

Schreck left the district in November 2010. *Id.* at 122. Kelly LaFaille became the new district manager. *Id.* at 124. Plaintiff applied for an open manager position at the North Augusta store in early 2011, but the position was awarded to co-worker Heather Karisny. *Id.* at 123–24. Plaintiff testified that the decision not to hire him "could be" based on his age, but he has not lodged any complaint with the Equal Employment Opportunity Commission regarding the North Augusta manager position. *Id.* at 125–26.

II.   Discussion

   A.   Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will

10

not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255.

    B.    Analysis

Plaintiff asserts a single cause of action for failure to promote under the ADEA. The ADEA makes it unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1); *see Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 591 (2004) (explaining that the ADEA "protect[s] a relatively old worker from discrimination that works to the advantage of the relatively young"). The age-based protections of the ADEA are "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631. The United States Supreme Court has held that to prevail on an ADEA claim, a plaintiff must show that age was the "but for" cause of the adverse action of the employer. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) ("To establish a disparate-treatment claim under the plain language of the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision.").

In the absence of direct evidence, as here, courts analyze age discrimination claims under the same burden-shifting framework used to resolve other discrimination cases.

11

*Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006).[3]  To establish a prima facie case of age discrimination for failure to promote, a plaintiff must establish: (1) he was at least 40 years old, (2) his employer had an open position for which he applied; (3) he was rejected despite his qualifications; and (4) the position remained open or was filled by a similarly-qualified applicant who was substantially younger than him, whether within or outside the class protected by the ADEA.  *Id.*

If the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  If the defendant carries this burden, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination.  *Laber*, 438 F.3d at 432.

Defendant does not challenge Plaintiff's ability to establish a prima facie case [Entry #20-1 at 13], and Plaintiff does not dispute that Defendant has articulated a legitimate, nondiscriminatory reason for failing to promote him.  Thus, the issue before the court is whether Plaintiff has demonstrated that Defendant's stated reason is pretextual and that discrimination was the "but for" cause of Defendant's promotion decisions.  [Entry #23 at 14].

---

[3] The Supreme Court recently noted that it "has not definitively decided" whether the *McDonnell Douglas* framework, first developed in the context of Title VII cases, "is appropriate in the ADEA context."  *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175, n. 2 (2009).  In the absence of further direction from the Supreme Court, the undersigned must follow Fourth Circuit precedent, which applies the *McDonnell Douglas* framework to ADEA claims.  *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004); *see also Bodkin v. Town of Strasburg*, 386 Fed. Appx. 411, 413–14 (4th Cir. 2010) (continuing to apply the *McDonnell Douglas* framework following the *Gross* opinion).

       1.     Plaintiff has failed to establish pretext.

"The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Billingslea v. Astrue*, C/A No. 6:10-1467, 2012 WL 988125, at *4 (D.S.C. March 22, 2012) (citations omitted). "The ultimate question is whether the employer intentionally discriminated and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [plaintiff's] proffered reason . . . is correct. . . . It is not enough to disbelieve the [employer]." *Love-Lane v. Martin*, 355 F.3d 766, 788 (4th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–47 (2000)) (internal citations omitted). Rather, Plaintiff must demonstrate that a reasonable jury could "believe [his] explanation of intentional . . . discrimination." *Id.*

Defendant's stated reasons for deciding not to promote Plaintiff were that he did not demonstrate an ability to get work done through people and that he was "too directive." [Entry #20-3 at 28].

Based on his prior work history, Plaintiff contends Defendant's position that he needed to work on his leadership skills is contradicted by the greater weight of the evidence. [Entry #23 at 16–19]. Although Plaintiff summarizes his work experience in detail, he fails to show that Defendant's opinion regarding his ability to lead others was not honestly held. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208 (4th Cir. 2007) (holding that plaintiff failed to establish pretext without evidence that the decision maker did not honestly believe the circumstances giving rise to the decision). In addition, while Plaintiff may believe he was highly qualified for the open positions, it is the perception of

13

the decision maker which is relevant. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) (holding that "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff").

As for being "too directive," Plaintiff argues this position is implausible because managers are supposed to provide direction and that such a trait would have made him "that much more qualified for the manager positions." [Entry #23 at 16]. Defendant responds that it is possible to be "too directive" and that Plaintiff has validated that he possesses the characteristic, taking issue only with it being construed negatively. [Entry #24 at 1–2]. The undersigned agrees that it is possible for someone to be more direct than necessary in a management setting. Furthermore, Plaintiff's self-assessment of the characteristic as a positive attribute is irrelevant. *See Evans*, 80 F.3d 960–61.

For the foregoing reasons, the undersigned recommends a finding that Plaintiff has failed to establish that Defendant's legitimate, nondiscriminatory reasons for declining to promote him were pretext for discrimination.

        2.     Plaintiff's "other evidence" does not establish discrimination.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), the Supreme Court instructed courts to consider, where applicable, "other evidence" beyond pretext when determining whether discrimination occurred. Here, Plaintiff argues that a reasonable factfinder could make a finding of intentional age discrimination based on the following evidence: (1) the ages of those hired for the open positions and of the other candidates; and (2) the age-related comments made by Schreck and Biestman. [Entry #23 at 19–20].

14

As to the ages of the other candidates and those hired, Plaintiff argues that all of the successful candidates were in their 20s, even though the "only real distinguishing factor between the six candidates" was their age. [Entry #23 at 20]. As is stated above, Defendant offered legitimate, nondiscriminatory reasons for declining to promote Plaintiff over some of the other candidates. Plaintiff has failed to show that those reasons were pretext for discrimination. Thus, Plaintiff's argument is unavailing because it rests on the faulty assumption that the candidates were equally qualified. Furthermore, looking solely at the ages of the candidates is meaningless because it is not disputed that there were no other applicants for the position and there is no evidence that older candidates were dissuaded from applying.

With regard to Biestman, Plaintiff contends that his "old man" comments "lead[] to the reasonable inference that such behavior was tolerated by the company and engrained in it's corporate culture." [Entry #23 at 21]. Plaintiff's argument is speculative, particularly in light of his admissions that he did not report Biestman's comments and that Biestman was not the ultimate decision maker regarding the promotions. *Id.*; Entry #20-2 at 99. Based solely on Biestman's prior management experience, his purported knowledge of "the goings on of upper management," and Schreck's characterization of Biestman as a "valuable resource," Plaintiff also speculates that Biestman had input into Schreck's promotion decision. [Entry #23 at 21]. A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Consequently, the undersigned concludes Biestman's comments are not sufficient to

15

defeat summary judgment. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (finding "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion").

As an extension to his argument that Biestman's age bias was indicative of Defendant's corporate culture, Plaintiff points to Defendant's high percentage of young employees and argues that a reasonable jury could infer that he was not chosen for a management position because he did not fit "the mold of a typical Starbucks employee." [Entry #23 at 22]. Plaintiff's reliance on the makeup of Defendant's workforce as a whole is unavailing. Even if 70% of Defendant's employees are under the age of 30, Plaintiff has failed to offer evidence showing that Defendant disproportionately hires younger candidates from its applicant pool. Without applicant data, the workforce statistics cannot demonstrate discriminatory animus.

Finally, Plaintiff attempts to rely on comments made by Schreck to establish age discrimination. In his pre-interview discussion with Plaintiff, Schreck, who is 146 days younger than Plaintiff, commented about himself that "for someone [his] age [he] still ha[d] a lot of energy." [Entry #20-2 at 69; Entry #20-3 at 6]. On a post-decision VIA conference call, Schreck "kept making references . . . about his age and the ability to change and how things were different now and how we've become sales persons." [Entry #20-2 at 127]. Defendant argues that these were stray remarks not worthy of consideration. [Entry #20-1 at 16–17]. Because Schreck made these remarks about himself and not in the context of the promotion decision, the undersigned concludes that they are insufficient to support a finding of intentional age discrimination. *See O'Connor*

16

*v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 549 (4th Cir. 1995) (holding that comments regarding the company needing "young blood" and that the plaintiff was too old to play eighteen holes of golf for five days were insufficient to establish age discrimination), *rev'd on other grounds*, 517 U.S. 308 (1996); *Equal Employment Opportunity Comm'n v. Clay Printing Co.*, 955 F.2d 936 (4th Cir. 1992) (holding that a comment that the company needed "young blood" and wanted to attract younger people was insufficient to establish age discrimination).

Based on the foregoing, the undersigned recommends a finding that Plaintiff has not produced sufficient "other evidence" to defeat summary judgment.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's motion for summary judgment [Entry #20] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

May 14, 2013                                                Shiva V. Hodges
Columbia, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).